**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Wren US Holdings Inc., *et. al*,<br><br>Debtors.[1] | Chapter 7<br><br>Case Nos. 26-10581 (KBO)<br><br>(Jointly Administered) |

**GLOBAL NOTES AND STATEMENT OF LIMITATIONS, METHODOLOGIES AND SPECIFIC DISCLOSURES REGARDING THE DEBTORS' SCHEDULES OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS**

The above captioned debtors (collectively, the "Debtors"), with the assistance of their advisors, have each filed their respective Schedules of Assets and Liabilities (the "Schedules") and Statements of Financial Affairs (the "Statements" and, together with the Schedules, the "Schedules and Statements") with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") pursuant to section 521 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

On April 24, 2026 (the "Petition Date"), the Debtors each filed a voluntary petition in the Bankruptcy Court under chapter 7 of the Bankruptcy Code. On April 27, 2026, David Carickhoff was appointed as the chapter 7 trustee of the Debtors.

The Schedules and Statements were prepared by the Debtors' advisors and former management and are unaudited. Although such parties have made reasonable efforts to accurately and completely disclose the assets, liabilities and other required information on the Schedules and Statements on an unconsolidated basis, the Schedules and Statements are based on information known to them at the time of the preparation and subsequent information or discovery may result in material changes to the Schedules and Statements. Accordingly, inadvertent errors or omissions may exist in the Schedules and Statements. Moreover, because the Schedules and Statements contain unaudited information that is subject to further review and potential adjustment, there can be no assurance that the Schedules and Statements are wholly accurate and complete. In no event shall the Debtors or their agents, attorneys and/or financial advisors be liable to any third party for any direct, indirect, incidental, consequential or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against the Debtors or damages to business reputation, lost business or profits), whether foreseeable or

---

[1] The debtors in these cases, along with the last four digits of the federal tax identification number for each of the debtors, where applicable are: Wren US Holdings, Inc. (2676); Wren Manufacturing, Inc. (0021); Wren Retail, Inc. (1884); Wren Logistics, Inc. (2433); Wren Kitchens New York, Inc. (0884); Wren New Jersey, Inc. (5706); Wren Connecticut, Inc. (7694); Wren Pennsylvania, Inc. (9696); Wren Kitchen Studios, Inc. (7230).

not and however caused, even if the Debtors or their agents, attorneys and/or financial advisors are advised of the possibility of such damages.  Further, nothing in the Schedules and Statements shall be binding against, or considered an admission by, any individual, including the Debtors' former management.

These Global Notes and Statement of Limitations, Methodologies and Specific Disclosures Regarding the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs (the "Global Notes") pertain to, are incorporated by reference in, and constitute an integral part of, each of the Debtors' Schedules and Statements.  Any party reviewing the Schedules and Statements should refer to, consider and consult with the Global Notes in connection with such review.

Mr. Craig Bishop, who was a former Director of each of the Debtor entities, signed each of the Schedules and Statements in his capacity as an authorized representative for each of the Debtors. In connection with his review and execution of the Schedules and Statements, Mr. Bishop necessarily has relied upon the efforts, statements and representations of a variety of the Debtors' personnel and advisors.  Mr. Bishop has not (and could not have) personally verified the accuracy of each statement and representation contained in the Schedules and Statements, including, without limitation, statements and representations concerning amounts owed to creditors, the classification of such amounts and creditor addresses.

## Global Notes

### 1. Amendment and Reservation of Rights

The Debtors and their advisors have made reasonable efforts to prepare and file complete and accurate Schedules and Statements; however, inadvertent errors or omissions in the Schedules and Statements may exist.  For example, the designation of a category is not meant to be wholly inclusive or descriptive of the rights or obligations represented by such item.  Further, due to the complexity and size of the Debtors' businesses, the Debtors may have improperly characterized, classified, categorized or designated certain items.  In addition, certain items reported in the Schedules and Statements may be included in more than one category.

The Debtors reserve the right to amend, supplement or otherwise modify the Schedules and Statements from time to time, in all respects, as may be necessary or appropriate to recharacterize, reclassify, recategorize or redesignate any items reported in the Schedules and Statements, but they are under no obligation to do so.

### 2. Basis of Presentation

For financial reporting purposes, the Debtors prepare consolidated financial statements. Unlike the consolidated financial statements, these Schedules and Statements reflect the assets and liabilities of each separate Debtor.  Accordingly, combining the assets and claims set forth in the Schedules and Statements of the Debtors would result in amounts that would be substantially different from financial information that would be prepared under Generally Accepted Accounting Principles ("GAAP").  Therefore, these Schedules and Statements do not purport to

represent financial statements prepared in accordance with GAAP.

3. **General Assumptions**

a. <u>Reporting Date.</u>  All asset and liability information contained in the Schedules and Statements is as of the end of business on April 18, 2026, the latest accounting period ended prior to the preparation of these Schedules and Statements, except where otherwise noted. Due to the timing of preparation, the Debtors' financials as of the Petition Date are not yet available. Where more recent information is available, the Debtors have endeavored to reflect this information in the Schedules and Statements. As such, the Schedules and Statements have been prepared on a "best efforts" basis to present the Debtors' financials as accurately as possible.

b. <u>Unaudited.</u> The books and records and the financial statements of the Debtors utilized to complete the information contained in the Schedules and Statements are unaudited and the Schedules and Statements do not purport to represent financial statements prepared in accordance with GAAP, federal or state securities laws or other applicable non-bankruptcy laws, regulations, or standards.

c. <u>Book Value.</u>  Unless otherwise noted, all amounts included in the Schedules reflect net book value as of April 18, 2026.  Various questions within the Schedules request "Current Value" or "Current Market Value." Given the number of Debtors and complexity of their business, the process of calculating, obtaining, or verifying "Current Market Value" would be prohibitively expensive, unduly burdensome and an inefficient use of estate resources.

Certain assets may not appear in the Schedules and Statements because the Debtors have depreciated the entire book value of such assets or otherwise expensed such assets in their entirety.

Nothing in the Schedules and Statements shall be, or shall be deemed to be, an admission that any Debtor was solvent or insolvent as of the Petition Date. Book values of assets generally do not reflect the current performance of the assets or the impact of the current price environment and may differ materially from the actual value and/or performance of the underlying assets.

d. <u>Currency.</u> All amounts are reflected in U.S. dollars, unless otherwise indicated. Assets and liabilities denominated in foreign currencies were translated into U.S. dollars at reasonable market exchange rates.

e. <u>Estimates.</u>  The preparation of the Schedules and Statements required the Debtors to make certain estimates and assumptions that affected the reported amounts of assets and liabilities, the disclosures of contingent assets and liabilities and the reported amounts of revenues and expenses. Actual results could differ materially from these estimates.

f.   Totals.  All totals that are included in the Schedules and Statements represent totals of all known amounts.  To the extent there are unknown or undetermined amounts, the actual total may be different than the listed total.

g.   Undetermined Amounts. The description of an amount as "unknown," "TBD," or "undetermined" is not intended to reflect upon the materiality of such amount.

h.   Consolidated Cash Management System.  The Debtors utilize a consolidated cash management system and, as such, the disbursements of various Debtors are paid by or through a limited number of Debtor bank accounts, notwithstanding that certain of those disbursements may relate to obligations of other Debtors.  Accordingly, pre-petition disbursements reported in the Statements have been reported based on the Debtor that maintains the bank account from which payments or distributions were made. Historically, Wren US Holdings Inc. has funded cash down to each of the subsidiary entities to fund normal course operating payments.

In addition, certain payments were made by non-Debtor affiliates of the Debtors (the "Non-Debtor Affiliates") on account of the Debtors. Such payments include, but are not limited to, payments for enterprise software, inventory, supplies and centralized services costs. The Debtors make certain chargeback payments to the Non-Debtor Affiliates related to such payments.

i.   Causes of Action.  Despite their reasonable efforts to identify all known assets, the Debtors may not have set forth all of their causes of action or potential causes of action against third parties as assets in their Schedules and Statements.  Neither the Global Notes nor the Schedules and Statements constitute a waiver of such causes of action or, in any way, prejudice or impair the assertion of any of the same.

j.   Property and Equipment.  In the ordinary course of their businesses, the Debtors lease vehicles from certain third-party lessors for use in the Debtors' daily operations and otherwise hold property owned by third-parties pursuant to contracts with such parties.  Any such leases or contracts are set forth in Schedule G based on the Debtors' reasonable efforts to identify such leases (and, to the extent applicable, Schedule A/B as property leased by the Debtors).  The property subject to any of such leases or contracts is not reflected in Schedule A/B as either owned property or assets of the Debtors.  Nor is such property reflected in the Debtors' Statements as property or assets of third-parties within the control of the Debtors.

k.   Liabilities. The liability information presented herein represents the estimated liability data of the Debtors as of the Petition Date, except as otherwise noted. Amounts presented herein are based on the Debtors' reasonable efforts to determine amounts owed to creditors. Amounts owed to vendors for certain goods in transit which may not have been received at the Debtors' facilities or services provided for which invoices have not been received may be understated due to lack of sufficient information. Accordingly, the Debtors reserve all of their rights to amend, supplement, or otherwise modify the Schedules and Statements as is necessary or appropriate.

NAI-1543396689v3                           -4-

The liabilities listed on the Schedules do not reflect any analysis of claims under section 503(b)(9) of the Bankruptcy Code. Accordingly, the Debtors reserve all of their rights to dispute or challenge the validity of any asserted claims under section 503(b)(9) of the Bankruptcy Code or the characterization of the structure of any transaction or any document or instrument related to any creditor's Claim.

l.   Real Estate Leases. In the ordinary course of their business, the Debtors lease facilities from certain third-party lessors for use in their daily operations. Any such leases are set forth in Schedule G and Schedule A/B 55. The property subject to any of such leases is not reflected in the Statements reflected as property or assets of third-parties within the control of the Debtors. Nothing in the Schedule is or shall be construed as an admission or determination as to the legal status of any lease (including whether any lease is a true lease or financing arrangement) and the Debtors reserve all rights with respect to any such leases.

m.   Claims Description.  Any failure to designate a claim listed on the Debtors' Schedules as "disputed," "contingent" or "unliquidated" does not constitute an admission by the Debtors that such amount is not "disputed," "contingent" or "unliquidated" or that such claim is not subject to objection.

Listing a claim on the Schedules and Statements as "unsecured priority" does not constitute an admission by the Debtors of the legal rights of the claimant. The Debtors hereby expressly reserve the right to assert that any claim listed as unsecured priority does not constitute an unsecured priority claim under section 507 of the Bankruptcy Code and thus constitutes an unsecured nonpriority claim.

Debtors may not have identified certain guarantees associated with the Debtors' executory contracts, unexpired leases, and other such agreements.  The Debtors reserve all of their rights to amend the Schedules to the extent that additional guarantees are identified or such guarantees are discovered to have expired or be unenforceable.  In the ordinary course of their businesses, the Debtors may be involved in pending or threatened litigation.  These matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross-claims and counter-claims against other parties.  Because all such claims are contingent, disputed and/or unliquidated, such claims have not been set forth individually on Schedule H. Litigation matters can be found on each Debtor's Schedule F and Statement 7, as applicable.  It is possible that certain guaranties embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements may have been inadvertently omitted.  The Debtors reserve their rights to amend the Schedules and Statements to the extent additional guaranties are identified. In addition, the Debtors reserve the right to amend the Schedules and Statements and to recharacterize or reclassify any such contract or claim, whether by amending the Schedules and Statements or in another appropriate filing.

n.   Excluded Assets and Liabilities.  The Debtors have excluded certain categories of assets, tax accruals and liabilities from the Schedules and Statements, including,

without limitation, goodwill, accrued salaries, certain employee benefit accruals, accrued expenses, and deferred revenue. The Debtors also have not attempted to anticipate rejection damage claims of counterparties to executory contracts and unexpired leases that may arise out of future contract or lease rejections. In addition, certain immaterial assets and liabilities may have been excluded.

o.  Intellectual Property. The Debtors' inadvertent exclusion of any intellectual property from the Schedules and Statements is not an admission that the Debtors have abandoned, terminated or assigned such intellectual property or that such intellectual property has expired by its own terms or was transferred pursuant to a sale, acquisition or other transaction. Conversely, the Debtors' inclusion of any intellectual property in the Schedules and Statements is not an admission that the Debtors have not abandoned, terminated or assigned such intellectual property or that such intellectual property has not expired by its own terms or was not transferred pursuant to a sale, acquisition or other transaction.

p.  Definition of Insiders. For purposes of the Schedules and Statements, the Debtors defined "insiders" pursuant to section 101(31) of the Bankruptcy Code as: (a) directors; (b) officers; (c) persons in control of the Debtors; (d) relatives of the Debtors' directors, officers, or persons in control of the Debtors; and (e) debtor/non-debtor affiliates of the foregoing. Persons listed as "insiders" have been included for informational purposes only and their being listed as such shall not be binding on any party.

q.  Global Notes Control. In the event that the Schedules and Statements differ from the Global Notes, the Global Notes shall control.

**4.  Specific Schedules of Assets and Liabilities Disclosures**

a.  Cash on hand (AB2). The Debtors periodically receive cash payments from customers at their retail showroom locations. Such cash is deposited on a daily basis into the bank accounts identified on Schedule AB3. As of the Petition Date and the preparation of these Schedules and Statements, the Debtors believe that there is no material cash on hand at any retail location. To the extent any cash receipts were deposited on or shortly prior to the Petition Date but have not yet cleared or been credited by the applicable depository institution, such amounts may not be reflected in the balances reported on Schedule AB3.

b.  Checking, savings, money market or financial brokerage accounts (AB3). The bank account balances are listed as of the Petition Date.

c.  Prepayments (AB8). Prior to the Petition Date, the Debtors made certain estimated payments of sales and use taxes to applicable taxing authorities in advance of their normal due dates which have been included on Schedule AB8. Such payments were made based on the Debtors' good faith estimates of amounts owed. To the extent such payments exceed the Debtors' actual tax liabilities for the applicable periods, the

Debtors may have claims for refunds or credits against such taxing authorities. Any such amounts are not presently known and have not been fully reconciled as of the Petition Date. Accordingly, any potential tax receivables have not been reflected given their contingent and unliquidated amounts. Out of an abundance of caution, the applicable taxing authorities have been listed on Schedule E/F in the event that such prepayments were insufficient to cover all obligations.

d. <u>Accounts Receivable (AB11).</u> Accounts receivable balances have been presented net of customer deposits or cash on account based on the book value as of April 18, 2026. Such accounts receivable have not been adjusted to reflect any counterclaims or set-offs that customers may assert based on breach of contract or other disputes.

e. <u>Non-publicly traded stock (AB15).</u> Ownership interests in subsidiaries, partnerships and joint ventures have been identified in AB15 in an undetermined amount because the fair market value of any such ownership interest is dependent on numerous variables and factors that may cause its fair market value to differ materially from its net book value. All entities listed are also Debtors in these Chapter 7 cases.

f. <u>Inventory, excluding agriculture assets (AB19 thru AB22).</u> A detailed listing of the Debtors' inventory is not available as of the Petition Date.  Items listed herein are presented as general groupings of asset classes based on the Debtors' last inventory taken. Actual amounts as of the Petition Date may be materially different as the Debtors may have utilized or sold such inventory in the ordinary course of business between the inventory date and the Petition Date.

g. <u>Office Furniture (AB39).</u> The Debtors' books and records do not separately identify or itemize office furniture. To the extent present, office furniture at retail showroom and store-within-store locations consists of incidental items, such as desks and chairs. As no separate value is reflected in the Debtors' books and records for such items, each Debtor has included a general line item on Schedule AB39 for completeness.

h. <u>Other Machinery, Fixtures, and Equipment (excluding farm machinery and equipment) (AB50).</u> Includes improvements and fixtures at Leased Properties and Licensed Locations (each as defined below).  The Debtors' books and records include certain capitalized costs, including, without limitation, installation costs, architectural and design fees, electrical work, and other similar expenditures. Such amounts are not separately listed on Schedule AB50 because they do not constitute discrete assets that are readily identifiable or separable from the underlying properties or equipment to which they relate, the Debtors are not able to reasonably determine the standalone value of such items as of the Petition Date, and such amounts may not be recoverable on a standalone basis.

i. <u>Real Property (AB55).</u> The Debtors lease certain real property used in the operation of their business (the "Leased Properties"), including retail showroom locations, office headquarters, and manufacturing facilities. Such leased properties are included on Schedule AB55 and the relevant leases are identified on Schedule G.

In addition, the Debtors operate certain store-within-store showroom locations (the "Licensed Locations") pursuant to license arrangements with The Home Depot under that certain Master Collaboration Agreement (the "Master Collaboration Agreement"). These Licensed Locations are not owned or leased by the Debtors and, accordingly, are not included on Schedule AB54-58.  The Master Collaboration Agreement (incorporating any and all schedules and amendments) is listed on Schedule G.

j.  Intangibles and Intellectual Property (AB60 thru AB62).  The Debtors do not own any intangible assets or intellectual property. All domain names, trademarks, copyrights, certain proprietary software and other intellectual property are owned by Non-Debtor Affiliates and usage by the Debtors is allowed through various royalty-free intercompany licensing arrangements.

k.  Insurance (AB73).  The Debtors maintain various insurance policies in the ordinary course of business.  Wren US Holdings, Inc. is the primary holder of the policies with the other Debtors included as named insureds. As such, each of the Debtors have included the policies on Schedule AB73.  With the exception of the Directors & Officers policy (which has been fully pre-paid) premiums on the policies are currently paid on a month-to-month basis and, absent additional payment, coverage may lapse on or after May 31, 2026.

l.  Other Property (AB77).  Prior to the Petition Date, the Debtors routinely engaged in intercompany transactions with other Debtors and Non-Debtor Affiliates. Intercompany balances are listed on both AB77 as well as Schedule F.

m.  Contingent Assets.  The Debtors exercised reasonable efforts to identify contingent assets although certain errors or omissions may exist. The Debtors reserve their rights to supplement the Schedules and Statements for such items at a later date.

n.  Schedule D.  The descriptions provided in Schedule D are intended only to be a summary. Reference to the applicable agreements and other related relevant documents is necessary for a complete description of the collateral and to determine the nature, extent, and priority of any liens. In certain instances, a Debtor may be a co-obligor, co-mortgagor, or guarantor with respect to scheduled claims of other Debtors and no claim set forth on Schedule D of any Debtor is intended to acknowledge claims of creditors that are otherwise satisfied or discharged by other entities. The Debtors have not included on Schedule D parties that may believe their claims are secured through setoff rights.

o.  Schedule E/F.  The Debtors have made reasonable efforts to report all priority and general unsecured claims against the Debtors on Schedule E/F based upon the Debtors' books and records as of the Petition Date.

The Debtors have listed all known taxing authorities for each Debtor on Schedule E/F. Certain of the tax claims may be subject to on-going audits, and the Debtors are otherwise unable to determine with certainty the amount of many, if not all, of the tax claims listed on Schedule E/F. Therefore, the Debtors have listed all such claims as "Undetermined" in amount, pending final resolution of on-going audits or outstanding issues. In addition, there may be other numerous contingent, unliquidated claims from state taxing authorities, not all of which are listed.

Prior to the Petition Date, all employees of the Debtors were terminated and provided with a "final" paycheck intended to satisfy all accrued and unpaid compensation obligations through the Petition Date, including, without limitation, salary, wages, commissions, and accrued but unused paid time off. The amounts reflected in such payments were based on the Debtors' good faith estimates and available records at the time. To the extent any amounts remain owing to employees, including as a result of adjustments to commissions or other variable compensation, such amounts are not presently known and may give rise to additional claims against the Debtors. Accordingly, any such claims are contingent and unliquidated, and have not been separately scheduled on Schedule E/F.

The claims of individual creditors for among other things, products, goods or services are listed as either the lower of the amounts invoiced by the creditor or the amounts entered on the Debtors' books and records and may not reflect credits or allowances due from such creditors to the Debtors. The claims listed on Schedule E/F arose or were incurred on various dates, and in certain instances, the date on which a claim arose may be an open issue of fact. While commercially reasonable efforts have been made, determining the date upon which each claim in Schedule E/F was incurred or arose would be unduly burdensome and cost prohibitive and, therefore, the Debtors have listed "various" for each claim listed on Schedule E/F. Amounts presented herein are based on the Debtors' best efforts to determine amounts owed to creditors as of the Petition Date. Amounts owed to vendors for certain goods in transit which have not yet been received may be understated due to lack of sufficient information. As set forth above, the claims listed on the Schedules do not reflect any analysis of claims under section 503(b)(9) of the Bankruptcy Code.

Schedule E/F reflects certain deposits received by the Debtors prior to the Petition Date. The Debtors have not undertaken a comprehensive analysis to determine the extent to which any such deposits may be entitled to priority treatment under section 507(a)(7) of the Bankruptcy Code or otherwise. Accordingly, out of an abundance of caution, all such claims have been listed on Schedule E/F as general unsecured, non-priority claims.

Further, certain customers may have received, or may in the future seek to obtain, refunds or chargebacks from credit card issuers or other payment processors with respect to such deposits, which could reduce or eliminate any corresponding priority or other such claims against the Debtors to the extent applicable. The Debtors have not reconciled the impact of any such potential recoveries as of the Petition Date.

The Debtors reserve all rights with respect to such deposits, including, without limitation, (i) the right to dispute the validity, priority, and amount of any such claims, and (ii) the right to assert any defenses, offsets, or recoupment rights with respect thereto.

Schedule E/F contains information regarding pending litigation involving the Debtors. To the extent multiple Debtors were named as defendants in a pending litigation, the Debtors made reasonable efforts to list the pending litigation as a claim on Schedule E/F of each respective Debtor. However, certain omissions may have occurred. The inclusion of any litigation action in the Schedules and Statements does not constitute an admission by the Debtors of any liability, the validity of any litigation, or the amount of any potential claim that may result from any claims with respect to any litigation action and the amount and treatment of any potential claim resulting from any litigation action currently pending or that may arise in the future.

Schedule E/F includes intercompany payables between Debtors and various other Debtors and Non-Debtor Affiliates.

Schedule E/F does not include certain deferred charges, deferred liabilities, accruals or general reserves. Such amounts are general estimates of liabilities and do not represent specific claims as of the Petition Date; however, they are reflected on the Debtors' books and records as required in accordance with GAAP.

At the time of filing of the Schedules and Statements, the Debtors may not have received all invoices for payables, expenses, and other liabilities that may have accrued prior to the Petition Date. Accordingly, the information contained in Schedules D and E/F may be incomplete. The Debtors reserve their rights to, but undertake no obligation to, amend Schedules D and E/F if and as they receive such invoices.

p. <u>Schedule G</u>. The Debtors' businesses are complex. Although the Debtors' books, records, financial systems and contracts management systems have been relied upon to identify and schedule executory contracts for each of the Debtors and reasonable efforts have been made to ensure the accuracy of Schedule G, inadvertent errors, omissions, or overinclusion may have occurred. The contracts, agreements and leases listed on Schedule G may have expired or may have been modified, amended or supplemented from time to time by various amendments, restatements, waivers, estoppels, certificates, letters, memoranda and other documents, instruments and agreements that may not be listed on Schedule G, despite the Debtors' use of reasonable efforts to identify such documents. In some cases, the same supplier or provider may appear multiple times on Schedule G. This multiple listing is intended to reflect distinct agreements between the applicable Debtor and such supplier or provider.

Certain of the contracts, agreements and leases listed on Schedule G may contain renewal options, guarantees of payments, options to purchase, rights of first refusal,

rights to lease additional space and other miscellaneous rights.  Such rights, powers, duties and obligations are not separately set forth on Schedule G.  Unless otherwise identified on Schedule G, each contract, agreement and lease identified therein shall include all exhibits, schedules, riders, modifications, declarations, amendments, supplements, attachments, restatements or other agreements made directly or indirectly by any such agreement, instrument or other document that in any manner affects such contract, agreement and lease, without respect to whether such contract, agreement and lease is listed therein.

Certain of the contracts, agreements and leases listed on Schedule G may have been entered into by more than one of the Debtors. Further, the specific Debtor obligor to certain of the executory contracts could not be specifically ascertained in every circumstance. In such cases, the Debtors made their best efforts to determine the correct Debtors' Schedule G on which to list such executory contract or unexpired lease. Executory contracts that are oral in nature, if any, have not been included on Schedule G.  Certain of the agreements listed on Schedule G may be in the nature of conditional sales agreements or secured financings.

The presence of a contract or agreement on Schedule G does not constitute an admission that any such contract or agreement is an executory contract or unexpired lease.

Schedule G is based on the best information available as of the Petition Date.

q.  <u>Schedule H.</u>  The Debtors have made reasonable efforts to locate and identify guarantees and other secondary liability claims (collectively, the "<u>Guarantees</u>") in each of the executory contracts, unexpired leases, secured financings, debt instruments and other such agreements to which any Debtor is a party.  However, the Debtors may not have identified all Guarantees that are embedded in the Debtors' executory contracts, unexpired leases, secured financings, debt instruments and other such agreements.  In addition, certain of the Guarantees reflected on Schedule H, if any, may have expired or no longer be enforceable.  In the ordinary course of their business, the Debtors may be involved in pending or threatened litigation and claims arising out of certain ordinary business transactions.  These matters may involve multiple plaintiffs and defendants, some or all of whom may assert cross claims or counter-claims against other parties.  Due to the volume of such claims, and because all such claims are contingent, unliquidated and disputed, and listed elsewhere in the Schedules and Statements, such claims have not been set forth individually on Schedule H.

5.  **Specific Statements of Financial Affairs Disclosures**

a.  <u>Statement 3.</u>  The amounts set forth in response to Statement 3 reflect payments made by the Debtors to creditors within the 90 days immediately preceding the Petition Date based on the Debtors' books and records and disbursement systems.  Such payments have been aggregated by creditor where appropriate and may reflect the

date of check issuance or payment initiation rather than the date such payments were honored or cleared by the applicable financial institution. Disbursements made on account of multiple invoices may be reflected as a single payment. In certain cases, payment may have been made by one Debtor for the benefit of, or on behalf of, multiple Debtors.  Any such payments have only been listed on the exhibits for the Debtor that made the payment.

The Debtors have excluded from Statement 3 certain payments and transfers, including, without limitation (i) payroll and employee-related payments including wages, salaries & expense reimbursements, (ii) payments to taxing authorities, (iii) customer refunds & returns, and (iv) transfers that the Debtors believe were not made on account of antecedent debt, including contemporaneous exchanges for new value and cash-on-delivery transactions.

The listing of any payment herein does not constitute, and the Debtors expressly reserve all rights with respect to, any characterization of such payment, including without limitation, whether such payment is avoidable or recoverable under applicable law.

b.  Statement 4.  The amounts set forth in response to Statement 4 reflect payments made by the Debtors to insiders (as defined in Section 101(31) of the Bankruptcy Code) within the one year immediately preceding the Petition Date, based on the Debtors' books and records and disbursement systems. Such payments have been aggregated by insider where appropriate and may reflect the date of check issuance or payment initiation rather than the date such payments were honored or cleared by the applicable financial institution.

Payments to Non-Debtor Affiliates are generally comprised of: (i) those related to payments made by the Non-Debtor Affiliates on account of the Debtors, including payments made for enterprise software, inventory, supplies and centralized services costs, and (ii) payments for inventory and raw materials purchased by the Debtors from their Non-Debtor Affiliates. All transactions between the Debtors and their Non-Debtor Affiliates were conducted on an arms-length basis.

In addition, during periods prior to the Petition Date, certain personnel employed by the Debtors provided services to entities owned by one of the Debtors' directors. The Debtors were reimbursed by the director for the payroll and related costs associated with such personnel on a periodic basis. Such personnel are no longer employed by the Debtors, and the Debtors do not believe that any amounts are outstanding or owing from these entities in respect of such arrangements as of the Petition Date. Out of an abundance of caution, the Debtors have listed these payroll payments, on an aggregated basis, on Statement 4.

The identification of any person or entity as an insider herein is for informational purposes and should not be construed as a legal conclusion or an admission that such parties are insiders for purposes of section 101(31) of the Bankruptcy Code. The

listing of any payment herein does not constitute, and the Debtors expressly reserve all rights with respect to, any characterization of such payment, including, without limitation, whether such payment is avoidable or recoverable under applicable law.

c.  <u>Statement 7.</u>  It is possible that certain suits and proceedings may have been inadvertently excluded in the Debtors' response to this Statement. The Debtors reserve all of their rights to amend or supplement their response to this Statement.

d.  <u>Statement 17.</u>  The Debtors maintain a 401(k) plan for the benefit of their employees, which includes employer matching contributions that vest over time in accordance with the terms of the applicable plan documents. All employees were terminated on or prior to the Petition Date.

    To the extent employees had unvested employer matching contributions as of their termination, such amounts may, in accordance with the terms of the plan, be subject to forfeiture and reversion to the Debtors. No assurance can be given as to the timing or amount of any such recoveries.

e.  <u>Statement 25.</u>  Certain of the Debtors own equity interests in subsidiaries that are also debtors in these chapter 7 cases. Accordingly, the information set forth in response to Statement 25 may include references to such entities; however, each Debtor has provided its own separate response to Statement 25. The ownership of such entities is also reflected on Schedule AB15 as equity interests of the applicable Debtor.

f.  <u>Statement 26.</u> The Debtors' books of account and records are maintained in the ordinary course of business by the Debtors, with assistance from certain employees, officers, and third-party service providers. To the extent any firm or individual is identified in response to Statement 26(c), such person or entity may possess only certain categories of the Debtors' books and records, whether in electronic or hard-copy form, and such possession may be shared with others.

    The Debtors have identified, to the best of their knowledge and based on a reasonable review of their books and records, those financial institutions, creditors, and other parties to whom the Debtors provided formal financial statements within the two years preceding the Petition Date. For purposes of Statement 26(d), "financial statements" generally include audited or unaudited financial statements and other formal financial reporting packages prepared by or on behalf of the Debtors.

    The Debtors have not included routine communications or disclosures provided in the ordinary course of business, including, without limitation, vendor credit applications, customer communications, marketing materials, or other informal financial information. The Debtors' responses may not include all recipients of such financial statements due to the limitations of the Debtors' books and records and the passage of time. The Debtors reserve all rights with respect to the completeness and characterization of the information provided.

g.  Statement 27. In the ordinary course of business, the Debtors utilize a perpetual inventory system to manage their inventory stock and raw material purchases. At the end of each fiscal year, the Debtors perform a physical inventory count as part of their annual close and audit procedures. The Debtors' auditor reviews this physical inventory count each year.  As such, there is no single Debtor employee that is responsible for maintaining the Debtors' inventory counts.

h.  Statement 30. In the ordinary course of business, the Debtors engaged in certain transactions with insiders. The primary shareholder of the Debtors' ultimate parent has, from time to time, used a corporate credit card to pay for certain personal expenses, which were reimbursed to the Debtors on a monthly basis. As of the Petition Date, the Debtors do not believe that any amounts are outstanding or owing from such shareholder in respect of such reimbursements.

Disbursements to insiders of the Debtors that have been listed in response to Statement 4 have not been duplicated in response to Statement 30.

**6.  Additional Notes**

a.  Claims of Third-Party Related Entities.  Although the Debtors have made every effort to properly classify each claim listed in the Schedules as being either disputed or undisputed, liquidated or unliquidated and contingent or noncontingent, the Debtors have not been able to fully reconcile all payments made to certain third parties and their related entities on account of the Debtors' obligations to both such entity and its affiliates. Therefore, to the extent that the Debtors have classified their estimate of claims of a creditor as disputed, all claims of such creditor's affiliates listed in the Schedules and Statements shall similarly be considered as disputed, whether or not they are designated as such.

b.  Umbrella Agreements. A number of contracts listed in the Schedules and Statements are umbrella agreements that cover some or all of the Debtors. Such agreements have been listed in the Schedules and Statements of the Debtor that was the main signatory to the agreement, although more than one of the Debtors may be obligated under the agreement.

**Fill in this information to identify the case:**

Debtor name _____Wren US Holdings, Inc._____

United States Bankruptcy Court for the:_____ District of __Delaware__
(State)

Case number (If known): ____26-10581_____

☐ Check if this is an amended filing

## Official Form 206Sum
# Summary of Assets and Liabilities for Non-Individuals    **12/15**

---

### Part 1:    Summary of Assets

1. *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

   1a. **Real property:**
   Copy line 88 from *Schedule A/B*........................................................................   $ N/A

   1b. **Total personal property:**
   Copy line 91A from *Schedule A/B*....................................................................   $ 389,421,081.28

   1c. **Total of all property:**
   Copy line 92 from *Schedule A/B*.......................................................................   $ 389,421,081.28

---

### Part 2:    Summary of Liabilities

2. *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)
   Copy the total dollar amount listed in Column A, *Amount of claim,* from line 3 of *Schedule D*............................................   $ 673,533.95

3. *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

   3a. **Total claim amounts of priority unsecured claims:**
   Copy the total claims from Part 1 from line 5a of *Schedule E/F*............................   $ N/A

   3b. **Total amount of claims of nonpriority amount of unsecured claims:**
   Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F*.......................................   + $ 241,472,602.62

4. **Total liabilities**................................................................................................................................................   $ 242,146,136.57
   Lines 2 + 3a + 3b

---

**Fill in this information to identify the case:**

Debtor name  Wren US Holdings, Inc.

United States Bankruptcy Court for the:_____ District of  Delaware
(State)

Case number (If known):  26-10581

☐ Check if this is an
amended filing

Official Form 206A/B

# Schedule A/B: Assets — Real and Personal Property    12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

## Part 1:    Cash and cash equivalents

1. **Does the debtor have any cash or cash equivalents?**

   ☐  No. Go to Part 2.
   ☑  Yes. Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
|---|---|

2. **Cash on hand**  $ N/A

3. **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|
| 3.1. HSBC | Checking | 2  0  7  0 | $ 49,999.85 |
| 3.2. | | ___ ___ ___ ___ | $ |

4. **Other cash equivalents** *(Identify all)*

   4.1. N/A    $ N/A
   4.2. N/A    $ N/A

5. **Total of Part 1**    $ 49,999.85

   Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

## Part 2:    Deposits and prepayments

6. **Does the debtor have any deposits or prepayments?**

   ☐  No. Go to Part 3.
   ☑  Yes. Fill in the information below.

| | Current value of debtor's interest |
|---|---|

7. **Deposits, including security deposits and utility deposits**

   Description, including name of holder of deposit

   7.1. see SCHEDULE AB7 ATTACHMENT    $
   7.2.    $

Official Form 206A/B    **Schedule A/B: Assets — Real and Personal Property**    page 1

Debtor    Wren US Holdings, Inc._____    Case number (*if known*) 26-10581_____
            Name

8. **Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**

   Description, including name of holder of prepayment

   8.1. Prepaid Rent - 8 Sound Shore - 8 Sound Shore Associates, LLC_____    $ 20,493.90_____

   8.2. Prepaid Insurance - various insurers (see schedule AB 73)_____    $ 101,564.87_____

9. **Total of Part 2.**    $ 462,358.77_____

   Add lines 7 through 8. Copy the total to line 81.

---

## Part 3:    Accounts receivable

10. **Does the debtor have any accounts receivable?**

    ☐ No. Go to Part 4.

    ☑ Yes. Fill in the information below.

    | | Current value of debtor's interest |
    |---|---|

11. **Accounts receivable**

    11a. 90 days old or less:    0.00_____ – 0.00_____ = ........→    $ 0.00_____
                                 face amount      doubtful or uncollectible accounts

    11b. Over 90 days old:       9,600.00_____ – 0.00_____ = ........→    $ 9,600.00_____
                                 face amount      doubtful or uncollectible accounts

12. **Total of Part 3**    $ 9,600.00_____

    Current value on lines 11a + 11b = line 12. Copy the total to line 82.

---

## Part 4:    Investments

13. **Does the debtor own any investments?**

    ☐ No. Go to Part 5.

    ☑ Yes. Fill in the information below.

    | | Valuation method used for current value | Current value of debtor's interest |
    |---|---|---|

14. **Mutual funds or publicly traded stocks not included in Part 1**

    Name of fund or stock:

    | | | |
    |---|---|---|
    | 14.1. N/A | N/A | $ N/A |
    | 14.2. N/A | N/A | $ N/A |

15. **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture**

    Name of entity:                                          % of ownership:

    | | | | |
    |---|---|---|---|
    | 15.1. See SCHEDULE AB 15 ATTACHMENT | ____ % | _____ | $ Undetermined |
    | 15.2. | ____ % | _____ | $ |

16. **Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1**

    Describe:

    | | | |
    |---|---|---|
    | 16.1. N/A | N/A | $ N/A |
    | 16.2. N/A | N/A | $ N/A |

17. **Total of Part 4**    $ N/A_____

    Add lines 14 through 16. Copy the total to line 83.

---

Official Form 206A/B    **Schedule A/B: Assets — Real and Personal Property**    page **2**

Debtor  Wren US Holdings, Inc.
_____    Case number (if known)_____
         Name

## Part 5:    Inventory, excluding agriculture assets

18. **Does the debtor own any inventory (excluding agriculture assets)?**

    ■ No. Go to Part 6.

    ❑ Yes. Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| **19. Raw materials** _____ MM / DD / YYYY | | $_____ | _____ | $_____ |
| **20. Work in progress** _____ MM / DD / YYYY | | $_____ | _____ | $_____ |
| **21. Finished goods, including goods held for resale** _____ MM / DD / YYYY | | $_____ | _____ | $_____ |
| **22. Other inventory or supplies** _____ MM / DD / YYYY | | $_____ | _____ | $_____ |

23. **Total of Part 5**

    Add lines 19 through 22. Copy the total to line 84.

    $_____

24. **Is any of the property listed in Part 5 perishable?**
    ❑ No
    ❑ Yes

25. **Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**

    ❑ No
    ❑ Yes. Book value _____   Valuation method_____   Current value_____

26. **Has any of the property listed in Part 5 been appraised by a professional within the last year?**
    ❑ No
    ❑ Yes

## Part 6:    Farming and fishing-related assets (other than titled motor vehicles and land)

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

    ■ No. Go to Part 7.

    ❑ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **28. Crops—either planted or harvested** _____ | $_____ | _____ | $_____ |
| **29. Farm animals** Examples: Livestock, poultry, farm-raised fish _____ | $_____ | _____ | $_____ |
| **30. Farm machinery and equipment** (Other than titled motor vehicles) _____ | $_____ | _____ | $_____ |
| **31. Farm and fishing supplies, chemicals, and feed** _____ | $_____ | _____ | $_____ |
| **32. Other farming and fishing-related property not already listed in Part 6** _____ | $_____ | _____ | $_____ |

Debtor  Wren US Holdings, Inc.
_____
Name

Case number (if known) 26-10581 _____

---

33. **Total of Part 6.**

Add lines 28 through 32. Copy the total to line 85.

$_____

34. **Is the debtor a member of an agricultural cooperative?**

❑ No

❑ Yes. Is any of the debtor's property stored at the cooperative?

❑ No

❑ Yes

35. **Has any of the property listed in Part 6 been purchased within 20 days before the bankruptcy was filed?**

❑ No

❑ Yes. Book value $_____ Valuation method _____ Current value $_____

36. **Is a depreciation schedule available for any of the property listed in Part 6?**

❑ No

❑ Yes

37. **Has any of the property listed in Part 6 been appraised by a professional within the last year?**

❑ No

❑ Yes

---

## Part 7:   Office furniture, fixtures, and equipment; and collectibles

38. **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

❑ No. Go to Part 8.

◼ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 39. **Office furniture** <br> see SCHEDULE AB 39 ATTACHMENT | $ 14,792.86 | Net Book Value | $ 14,792.86 |
| 40. **Office fixtures** <br> Display stock - 8 Sound Shore, CT | $ 87,717.39 | Net Book Value | $ 87,717.39 |
| 41. **Office equipment, including all computer equipment and communication systems equipment and software** <br> See SCHEDULE AB 41 ATTACHMENT | $ 261,648.71 | Net Book Value | $ 261,648.71 |
| 42. **Collectibles** *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles | | | |
| 42.1 N/A | $ N/A | N/A | $ N/A |
| 42.2 N/A | $ N/A | N/A | $ N/A |
| 42.3 N/A | $ N/A | N/A | $ N/A |

43. **Total of Part 7.**

Add lines 39 through 42. Copy the total to line 86.

$ 364,158.96

44. **Is a depreciation schedule available for any of the property listed in Part 7?**

❑ No

◼ Yes

45. **Has any of the property listed in Part 7 been appraised by a professional within the last year?**

◼ No

❑ Yes

---

Debtor    Wren US Holdings, Inc.
_____
Name

Case number *(if known)* 26-10581
_____

---

## Part 8:    Machinery, equipment, and vehicles

46. **Does the debtor own or lease any machinery, equipment, or vehicles?**

  ☐ No. Go to Part 9.

  ☑ Yes. Fill in the information below.

| General description<br><br>Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest<br><br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **47. Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles** | | | |
| 47.1 N/A | $ N/A | N/A | $ N/A |
| 47.2 N/A | $ N/A | N/A | $ N/A |
| 47.3 N/A | $ N/A | N/A | $ N/A |
| 47.4 N/A | $ N/A | N/A | $ N/A |
| **48. Watercraft, trailers, motors, and related accessories** Examples: Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels | | | |
| 48.1 N/A | $ N/A | N/A | $ N/A |
| 48.2 N/A | $ N/A | N/A | $ N/A |
| **49. Aircraft and accessories** | | | |
| 49.1 N/A | $ N/A | N/A | $ N/A |
| 49.2 N/A | $ N/A | N/A | $ N/A |
| **50. Other machinery, fixtures, and equipment (excluding farm machinery and equipment)** | | | |
| See SCHEDULE AB 50 ATTACHMENT | $ 136,043.56 | Net Book Value | $ 136,043.56 |

51. **Total of Part 8.**

   Add lines 47 through 50. Copy the total to line 87.

   $ 136,043.56

52. **Is a depreciation schedule available for any of the property listed in Part 8?**

  ☐ No

  ☑ Yes

53. **Has any of the property listed in Part 8 been appraised by a professional within the last year?**

  ☑ No

  ☐ Yes

---

Debtor    Wren US Holdings, Inc.
_____
Name

Case number (*if known*)__26-10581_____

## Part 9:    Real property

54. **Does the debtor own or lease any real property?**

☐ No. Go to Part 10.

☑ Yes. Fill in the information below.

55. **Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property<br>Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building). if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 55.1 Headoffice<br>8 Sound Shore Drive, Greenwich, CT 06830 | Leased | $ Unknown | Unknown | $ Unknown |
| 55.2 777 Summer St, Stamford CT 06901 | Leased | $ Unknown | Unknown | $ Unknown |
| 55.3 _____ | _____ | $_____ | _____ | $_____ |
| 55.4 _____ | _____ | $_____ | _____ | $_____ |
| 55.5 _____ | _____ | $_____ | _____ | $_____ |
| 55.6 _____ | _____ | $_____ | _____ | $_____ |

56. **Total of Part 9.**

Add the current value on lines 55.1 through 55.6 and entries from any additional sheets. Copy the total to line 88.

$ Unknown

57. **Is a depreciation schedule available for any of the property listed in Part 9?**

☑ No

☐ Yes

58. **Has any of the property listed in Part 9 been appraised by a professional within the last year?**

☑ No

☐ Yes

## Part 10:    Intangibles and intellectual property

59. **Does the debtor have any interests in intangibles or intellectual property?**

☑ No. Go to Part 11.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 60. **Patents, copyrights, trademarks, and trade secrets**<br>_____ | $_____ | _____ | $_____ |
| 61. **Internet domain names and websites**<br>_____ | $_____ | _____ | $_____ |
| 62. **Licenses, franchises, and royalties**<br>_____ | $_____ | _____ | $_____ |
| 63. **Customer lists, mailing lists, or other compilations**<br>_____ | $_____ | _____ | $_____ |
| 64. **Other intangibles, or intellectual property**<br>_____ | $_____ | _____ | $_____ |
| 65. **Goodwill**<br>_____ | $_____ | _____ | $_____ |

66. **Total of Part 10.**

Add lines 60 through 65. Copy the total to line 89.

$_____

Debtor    Wren US Holdings, Inc.
          _____    Case number (*if known*) 26-10581 _____
          Name

---

67. **Do your lists or records include personally identifiable information of customers** (as defined in 11 U.S.C. §§ 101(41A) and 107)**?**
    - ❑ No
    - ❑ Yes

68. **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**
    - ❑ No
    - ❑ Yes

69. **Has any of the property listed in Part 10 been appraised by a professional within the last year?**
    - ❑ No
    - ❑ Yes

## Part 11:   All other assets

70. **Does the debtor own any other assets that have not yet been reported on this form?**

    Include all interests in executory contracts and unexpired leases not previously reported on this form.

    - ❑ No. Go to Part 12.
    - ■ Yes. Fill in the information below.

|  | Current value of debtor's interest |
|---|---|

71. **Notes receivable**

    Description (include name of obligor)

    N/A _____

    N/A _____ − N/A _____ = ➔   $ N/A _____
    Total face amount    doubtful or uncollectible amount

72. **Tax refunds and unused net operating losses (NOLs)**

    Description (for example, federal, state, local)

    Federal Tax
    _____    Tax year 2022 _____    $ 731,000.00 _____
    Interest
    _____    Tax year 2022 _____    $ 105,353.93 _____
    _____    Tax year _____    $ _____

73. **Interests in insurance policies or annuities**
    See SCHEDULE AB 73 ATTACHMENT _____    $ Unknown _____

74. **Causes of action against third parties (whether or not a lawsuit has been filed)**

    N/A _____    $ N/A _____

    **Nature of claim**    N/A _____

    **Amount requested**    $ N/A _____

75. **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims**

    N/A _____    $ N/A _____

    **Nature of claim**    N/A _____

    **Amount requested**    $ N/A _____

76. **Trusts, equitable or future interests in property**

    N/A _____    $ N/A _____

77. **Other property of any kind not already listed** *Examples:* Season tickets, country club membership

    See SCHEDULE AB 77 ATTACHMENT _____    $ 387,562,566.21 _____

    _____    $ _____

78. **Total of Part 11.**

    Add lines 71 through 77. Copy the total to line 90.    $ 388,398,920.14 _____

79. **Has any of the property listed in Part 11 been appraised by a professional within the last year?**
    - ■ No
    - ❑ Yes

---

Debtor    Wren US Holdings, Inc.                                    Case number *(if known)* 26-10581
          _____              _____
          Name

## Part 12:   Summary

**In Part 12 copy all of the totals from the earlier parts of the form.**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1.* | $ 49,999.85 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $ 462,358.77 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $ 9,600.00 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $ N/A | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $ N/A | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $ N/A | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $ 364,158.96 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $ 136,043.56 | |
| 88. **Real property.** *Copy line 56, Part 9.* . .................................................➔ | | $ N/A |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $ N/A | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $ 388,398,920.14 | |
| 91. **Total.** Add lines 80 through 90 for each column. ........................... 91a. | $ 389,421,081.28 | **+** 91b. $ N/A |

92. **Total of all property on Schedule A/B.**  Lines 91a + 91b = 92. ...................................................   $ 389,421,081.28

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case:</strong></td></tr>
<tr><td>Debtor name</td><td>Wren US Holdings, Inc.</td></tr>
<tr><td>United States Bankruptcy Court for the:</td><td>District of Delaware (State)</td></tr>
<tr><td>Case number (If known):</td><td>26-10581</td></tr>
</table>

☐ Check if this is an amended filing

## Official Form 206D

# Schedule D: Creditors Who Have Claims Secured by Property    12/15

**Be as complete and accurate as possible.**

1. **Do any creditors have claims secured by debtor's property?**
   ☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.
   ☑ Yes. Fill in all of the information below.

**Part 1:    List Creditors Who Have Secured Claims**

2. **List in alphabetical order all creditors who have secured claims.** If a creditor has more than one secured claim, list the creditor separately for each claim.

| | **Column A** Amount of claim Do not deduct the value of collateral. | **Column B** Value of collateral that supports this claim |
|---|---|---|

**2.1**

**Creditor's name**
Wren US Holdings, Ltd.

**Creditor's mailing address**
The Nest, Falkland Way, Barton Upon Humber, DN18 5RL, United Kingdom

**Creditor's email address, if known**
craig.bishop@wrenkitchens.com

**Date debt was incurred** 4/23/2026
**Last 4 digits of account number** __ __ __ __

**Do multiple creditors have an interest in the same property?**
☑ No
☐ Yes. Specify each creditor, including this creditor, and its relative priority.
_____
_____

**Describe debtor's property that is subject to a lien**
All personal property and assets of the Debtor

**Describe the lien**
Continuing first priority security interest

**Is the creditor an insider or related party?**
☐ No
☑ Yes

**Is anyone else liable on this claim?**
☐ No
☑ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H).

**As of the petition filing date, the claim is:**
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Column A: $ 673,533.95    Column B: $ Unknown

**2.2**

**Creditor's name**
_____

**Creditor's mailing address**
_____
_____

**Creditor's email address, if known**
_____

**Date debt was incurred** _____
**Last 4 digits of account number** __ __ __ __

**Do multiple creditors have an interest in the same property?**
☐ No
☐ Yes. Have you already specified the relative priority?
   ☐ No. Specify each creditor, including this creditor, and its relative priority.
   _____
   _____
   ☐ Yes. The relative priority of creditors is specified on lines _____

**Describe debtor's property that is subject to a lien**
_____

**Describe the lien**
_____

**Is the creditor an insider or related party?**
☐ No
☐ Yes

**Is anyone else liable on this claim?**
☐ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H).

**As of the petition filing date, the claim is:**
Check all that apply.
☐ Contingent
☐ Unliquidated
☐ Disputed

Column A: $ _____    Column B: $ _____

3. **Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.**    $ 673,533.95

Official Form 206D    Schedule D: Creditors Who Have Claims Secured by Property    page 1 of ___

**Fill in this information to identify the case:**

Debtor ___Wren US Holdings, Inc._____

United States Bankruptcy Court for the: _____ District of ___Delaware_____
(State)

Case number ___26-10581_____
(If known)

☐ Check if this is an amended filing

Official Form 206E/F

# Schedule E/F: Creditors Who Have Unsecured Claims          12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B) and on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

## Part 1:   List All Creditors with PRIORITY Unsecured Claims

**1. Do any creditors have priority unsecured claims?** (See 11 U.S.C. § 507).
☐ No. Go to Part 2.
☑ Yes. Go to line 2.

**2. List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part.** If the debtor has more than 3 creditors with priority unsecured claims, fill out and attach the Additional Page of Part 1.

| | | Total claim | Priority amount |
|---|---|---|---|
| | | | |

**2.1** **Priority creditor's name and mailing address**
Town of Greenwich – Tax Collector

Town Hall, 101 Field Point Road, Greenwich, Connecticut, 06830

_____

**Date or dates debt was incurred**

Various

**Last 4 digits of account number**   ___ ___ ___ ___

**Specify Code subsection of PRIORITY unsecured claim:** 11 U.S.C. § 507(a) (_____)

**As of the petition filing date, the claim is:**
*Check all that apply.*
☑ Contingent
☑ Unliquidated
☑ Disputed

**Basis for the claim:**
Personal Property Taxes

**Is the claim subject to offset?**
☐ No
☐ Yes

Total claim: $ _Undetermined_____
Priority amount: $_____

**2.2** **Priority creditor's name and mailing address**
Internal Revenue Service

Centralized Insolvency Operation

P.O. Box 7346, Philadelphia, PA 19101-7346

**Date or dates debt was incurred**

Various

**Last 4 digits of account number**   ___ ___ ___ ___

**Specify Code subsection of PRIORITY unsecured claim:** 11 U.S.C. § 507(a) (_____)

**As of the petition filing date, the claim is:**
*Check all that apply.*
☑ Contingent
☑ Unliquidated
☑ Disputed

**Basis for the claim:**
Income Tax

**Is the claim subject to offset?**
☐ No
☐ Yes

Total claim: $ _Undetermined_____
Priority amount: $_____

**2.3** **Priority creditor's name and mailing address**
_____
_____
_____

**Date or dates debt was incurred**

_____

**Last 4 digits of account number**   ___ ___ ___ ___

**Specify Code subsection of PRIORITY unsecured claim:** 11 U.S.C. § 507(a) (_____)

**As of the petition filing date, the claim is:**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:**
_____

**Is the claim subject to offset?**
☐ No
☐ Yes

Total claim: $_____
Priority amount: $_____

Debtor    Wren US Holdings, Inc. _____    Case number *(if known)* 26-10581_____
          Name

## Part 2:  List All Creditors with NONPRIORITY Unsecured Claims

3.  **List in alphabetical order all of the creditors with nonpriority unsecured claims.** If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

|  |  | **Amount of claim** |
| --- | --- | --- |

**3.1** | **Nonpriority creditor's name and mailing address**
See SCHEDULE F ATTACHMENT
_____
_____
_____

**As of the petition filing date, the claim is:**
*Check all that apply.*
❑ Contingent
❑ Unliquidated
❑ Disputed

**Basis for the claim:** _____

**Date or dates debt was incurred**    _____
**Last 4 digits of account number**    __ __ __ __

**Is the claim subject to offset?**
❑ No
❑ Yes

$ 241,472,602.62_____

**3.2** | **Nonpriority creditor's name and mailing address**
_____
_____
_____
_____

**As of the petition filing date, the claim is:**
*Check all that apply.*
❑ Contingent
❑ Unliquidated
❑ Disputed

**Basis for the claim:** _____

**Date or dates debt was incurred**    _____
**Last 4 digits of account number**    __ __ __ __

**Is the claim subject to offset?**
❑ No
❑ Yes

$ _____

**3.3** | **Nonpriority creditor's name and mailing address**
_____
_____
_____
_____

**As of the petition filing date, the claim is:**
*Check all that apply.*
❑ Contingent
❑ Unliquidated
❑ Disputed

**Basis for the claim:** _____

**Date or dates debt was incurred**    _____
**Last 4 digits of account number**    __ __ __ __

**Is the claim subject to offset?**
❑ No
❑ Yes

$ _____

**3.4** | **Nonpriority creditor's name and mailing address**
_____
_____
_____
_____

**As of the petition filing date, the claim is:**
*Check all that apply.*
❑ Contingent
❑ Unliquidated
❑ Disputed

**Basis for the claim:** _____

**Date or dates debt was incurred**    _____
**Last 4 digits of account number**    __ __ __ __

**Is the claim subject to offset?**
❑ No
❑ Yes

$ _____

**3.5** | **Nonpriority creditor's name and mailing address**
_____
_____
_____
_____

**As of the petition filing date, the claim is:**
*Check all that apply.*
❑ Contingent
❑ Unliquidated
❑ Disputed

**Basis for the claim:** _____

**Date or dates debt was incurred**    _____
**Last 4 digits of account number**    __ __ __ __

**Is the claim subject to offset?**
❑ No
❑ Yes

$ _____

**3.6** | **Nonpriority creditor's name and mailing address**
_____
_____
_____
_____

**As of the petition filing date, the claim is:**
*Check all that apply.*
❑ Contingent
❑ Unliquidated
❑ Disputed

**Basis for the claim:** _____

**Date or dates debt was incurred**    _____
**Last 4 digits of account number**    __ __ __ __

**Is the claim subject to offset?**
❑ No
❑ Yes

$ _____

Debtor    Wren US Holdings, Inc.
_____          _____
Name                                                                        Case number (if known)

| Part 4: | Total Amounts of the Priority and Nonpriority Unsecured Claims |
|---------|-------------------------------------------------------------|

5.  **Add the amounts of priority and nonpriority unsecured claims.**

|  |  | **Total of claim amounts** |
|---|---|---|
| 5a. **Total claims from Part 1** | 5a. | $ N/A |
| 5b. **Total claims from Part 2** | 5b. + | $ 241,472,602.62 |
| 5c. **Total of Parts 1 and 2**<br>Lines 5a + 5b = 5c. | 5c. | $ 241,472,602.62 |

**Fill in this information to identify the case:**

Debtor name ___Wren US Holdings, Inc._____

United States Bankruptcy Court for the:_____ District of ___Delaware___
                                                                    (State)

Case number (If known): ___26-10581_____   Chapter ___7___

☐ Check if this is an amended filing

Official Form 206G

# Schedule G: Executory Contracts and Unexpired Leases                    12/15

**Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, numbering the entries consecutively.**

1. **Does the debtor have any executory contracts or unexpired leases?**

   ☐ No. Check this box and file this form with the court with the debtor's other schedules. There is nothing else to report on this form.

   ☑ Yes. Fill in all of the information below even if the contracts or leases are listed on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B).

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|
| **2.1** State what the contract or lease is for and the nature of the debtor's interest: See SCHEDULE G ATTACHMENT<br><br>State the term remaining<br>List the contract number of any government contract | |
| **2.2** State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br>List the contract number of any government contract | |
| **2.3** State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br>List the contract number of any government contract | |
| **2.4** State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br>List the contract number of any government contract | |
| **2.5** State what the contract or lease is for and the nature of the debtor's interest<br><br>State the term remaining<br>List the contract number of any government contract | |

**Fill in this information to identify the case:**

Debtor name  Wren US Holdings, Inc.

United States Bankruptcy Court for the: _____  District of  Delaware
_____(State)

Case number (If known): 26-10581

☐ Check if this is an amended filing

Official Form 206H

# Schedule H: Codebtors

**12/15**

**Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the Additional Page to this page.**

1. **Does the debtor have any codebtors?**
   ☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.
   ☑ Yes

2. **In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, *Schedules D-G*.** Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

| Column 1: Codebtor | | Column 2: Creditor | |
|---|---|---|---|
| **Name** | **Mailing address** | **Name** | **Check all schedules that apply:** |
| 2.1 _____ | See SCHEDULE H ATTACHMENT<br>Street<br>_____<br>City      State      ZIP Code | _____ | ☐ D<br>☐ E/F<br>☐ G |
| 2.2 _____ | Street<br>_____<br>City      State      ZIP Code | _____ | ☐ D<br>☐ E/F<br>☐ G |
| 2.3 _____ | Street<br>_____<br>City      State      ZIP Code | _____ | ☐ D<br>☐ E/F<br>☐ G |
| 2.4 _____ | Street<br>_____<br>City      State      ZIP Code | _____ | ☐ D<br>☐ E/F<br>☐ G |
| 2.5 _____ | Street<br>_____<br>City      State      ZIP Code | _____ | ☐ D<br>☐ E/F<br>☐ G |
| 2.6 _____ | Street<br>_____<br>City      State      ZIP Code | _____ | ☐ D<br>☐ E/F<br>☐ G |

**SCHEDULE AB 7 ATTACHMENT**

Deposits, including security deposits and utility deposits

| Description, including name of holder of deposit | Current Value |
|---|---|
| Payroll deposit on account - ADP | 37,500.00 |
| Security Deposit - 8 SOUND SHORE ASSOCIATES, LLC | 302,800.00 |
| Security Deposit - 777 Summer St | 750.00 |

**SCHEDULE AB 15 ATTACHMENT**

Non-Publicly Traded Stock and Interests in Incorporated and Unincorporated Businesses

| Name of Entity | % of Ownership | Valuation Method | Current Value |
|---|---|---|---|
| Wren Logistics, Inc. | 100.0% | None | Undetermined |
| Wren Manufacturing, Inc. | 100.0% | None | Undetermined |
| Wren Retail, Inc. | 100.0% | None | Undetermined |

**SCHEDULE AB 39 ATTACHMENT**
Office Furniture

| General Description | Net Book Value | Valuation Method | Current Value |
|---|---|---|---|
| 2 x MEETING ROOM TABLES - 1110 Hanover St, PA | $542.42 | Net Book Value | $542.42 |
| 7 x PACKING CRATES - 1110 Hanover St, PA | $1,374.94 | Net Book Value | $1,374.94 |
| House, Home & More Indoor Outdoor- Carpet Runners - 1110 Hanover St, PA | $602.56 | Net Book Value | $602.56 |
| IKEA NEW HAVEN, NEW HAVEN, USA - 1110 Hanover St, PA | $547.68 | Net Book Value | $547.68 |
| IKEA NEW HAVEN, NEW HAVEN, USA - 1110 Hanover St, PA | $890.24 | Net Book Value | $890.24 |
| IKEA NEW HAVEN, NEW HAVEN, USA - 1110 Hanover St, PA | $1,213.39 | Net Book Value | $1,213.39 |
| IKEA NEW HAVEN, NEW HAVEN, USA - 1110 Hanover St, PA | $871.18 | Net Book Value | $871.18 |
| Office Furniture - 1110 Hanover St, PA | $8,665.12 | Net Book Value | $8,665.12 |
| Simpli-Magic Janitorial Cart - 1110 Hanover St, PA | $85.32 | Net Book Value | $85.32 |

**SCHEDULE AB 41 ATTACHMENT**
Office Equipment

| General Description | Net Book Value | Valuation Method | Current Value |
|---|---|---|---|
| Active - Sound Shore, CT | $1.27 | Net Book Value | $1.27 |
| Adapter - 1110 Hanover St, PA | $11.00 | Net Book Value | $11.00 |
| Battery - Sound Shore, CT | $5.14 | Net Book Value | $5.14 |
| Camera - 1110 Hanover St, PA | $36.54 | Net Book Value | $36.54 |
| Camera - Sound Shore, CT | $1,908.07 | Net Book Value | $1,908.07 |
| Cotroller - Sound Shore, CT | $14.31 | Net Book Value | $14.31 |
| Disc player - 1110 Hanover St, PA | $4.45 | Net Book Value | $4.45 |
| Headset - Sound Shore, CT | $3,102.28 | Net Book Value | $3,102.28 |
| Internet Hardware - 1110 Hanover St, PA | $342.78 | Net Book Value | $342.78 |
| Internet Hardware - Sound Shore, CT | $4,986.30 | Net Book Value | $4,986.30 |
| Ipad - 1110 Hanover St, PA | $110.01 | Net Book Value | $110.01 |
| IT Cables - 1110 Hanover St, PA | $4,268.23 | Net Book Value | $4,268.23 |
| IT Cables - Sound Shore, CT | $0.44 | Net Book Value | $0.44 |
| IT fixtures - 1110 Hanover St, PA | $21.48 | Net Book Value | $21.48 |
| IT fixtures - Sound Shore, CT | $1,692.74 | Net Book Value | $1,692.74 |
| Keyboard - 1110 Hanover St, PA | $6.60 | Net Book Value | $6.60 |
| Laptop - 1110 Hanover St, PA | $14.11 | Net Book Value | $14.11 |
| Laptop - Sound Shore, CT | $9,823.68 | Net Book Value | $9,823.68 |
| Laptops - 1110 Hanover St, PA | $260.01 | Net Book Value | $260.01 |
| Macbook - Sound Shore, CT | $1,615.68 | Net Book Value | $1,615.68 |
| Mouse - 1110 Hanover St, PA | $5.04 | Net Book Value | $5.04 |
| Mouse - Sound Shore, CT | $0.04 | Net Book Value | $0.04 |
| Other IT - 1110 Hanover St, PA | $713.86 | Net Book Value | $713.86 |
| Other IT - Sound Shore, CT | $221,738.03 | Net Book Value | $221,738.03 |
| Phone - 1110 Hanover St, PA | $225.56 | Net Book Value | $225.56 |
| Phone - Sound Shore, CT | $7,703.16 | Net Book Value | $7,703.16 |
| Phones - 1110 Hanover St, PA | $258.19 | Net Book Value | $258.19 |
| Playstation - 1110 Hanover St, PA | $35.65 | Net Book Value | $35.65 |
| Printer - 1110 Hanover St, PA | $38.27 | Net Book Value | $38.27 |
| Printer - Sound Shore, CT | $710.45 | Net Book Value | $710.45 |
| Projector - 1110 Hanover St, PA | $10.96 | Net Book Value | $10.96 |
| Projector - Sound Shore, CT | $808.76 | Net Book Value | $808.76 |
| Security kit  - Sound Shore, CT | $0.68 | Net Book Value | $0.68 |
| Shredder - Sound Shore, CT | $5.81 | Net Book Value | $5.81 |
| Speakers - 1110 Hanover St, PA | $3.56 | Net Book Value | $3.56 |
| TV - 1110 Hanover St, PA | $487.42 | Net Book Value | $487.42 |
| TV - Sound Shore, CT | $636.16 | Net Book Value | $636.16 |
| VR - Sound Shore, CT | $41.98 | Net Book Value | $41.98 |

**SCHEDULE AB 50 ATTACHMENT**
Other Machinery, Fixtures, and Equipment

| General Description (Include year, make, model, and identification numbers) | Net Book Value | Valuation Method | Current Value |
|---|---|---|---|
| Monitors - 1110 Hanover St, PA | $152.82 | Net Book Value | $152.82 |
| Monitors - Sound Shore, CT | $132,289.87 | Net Book Value | $132,289.87 |
| Routers - 1110 Hanover St, PA | $322.93 | Net Book Value | $322.93 |
| Routers - Sound Shore, CT | $3,277.94 | Net Book Value | $3,277.94 |

**SCHEDULE AB 73 ATTACHMENT**
Interests in Insurance Policies or Annuities

| General Description | Current Value |
|---|---|
| Commercial Auto - Travelers - 8102W5027182414G - 12/31/2025-12/31/2026 | Unknown |
| Excess Property - Amherst - AH03-JRL-260000359-00 - 12/31/2025-12/31/2026 | Unknown |
| Excess Umbrella - American Guarantee - AEC443790901 - 02/05/2026- | Unknown |
| Excess Umbrella - CNA - 7036551071 - 12/31/2025-12/31/2026 | Unknown |
| Excess Umbrella - Travelers - EX3W313825 - 02/05/2026-12/31/2026 | Unknown |
| General Liability - Travelers - Y6309X261124TIA25 - 12/31/2025-12/31/2026 | Unknown |
| Inland Marine - Travelers - Y6309X261124TIA25 - 12/31/2025-12/31/2026 | Unknown |
| Lead Umbrella - Travelers - CUP-2W521481 - 12/31/2025-12/31/2026 | Unknown |
| Ocean and Transit - Travelers - ZOC51N7667223ND - 02/05/2026-12/31/2028 | Unknown |
| Property - Travelers - Y6309X261124TIA25 - 12/31/2025-12/31/2026 | Unknown |
| D&O Insurance - B0509FINWM2650041 | Unknown |

**SCHEDULE AB 77 ATTACHMENT**
Other property of any kind not already listed

| General Description | Current Value |
| --- | --- |
| Intercompany receivables - Wren Logistics, Inc. | $32,567,451.02 |
| Intercompany receivables - Wren Manufacturing, Inc. | $200,122,190.57 |
| Intercompany receivables - Wren Retail, Inc. | $154,872,924.62 |

SCHEDULE F ATTACHMENT
Creditors Who Have Non-Priority Unsecured Claims

| ID | Creditor's Name | Address 1 | Address 2 | City | State | ZIP | Country | Date Incurred | Basis for Claim | Contingent | Unliquidated | Disputed | Is the Claim Subject to Offset? (Yes/No) | Total Claim |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3.3419 | Comcast Business | 1701 JFK Boulevard | | Philadelphia | Pennsylvania | 19103 | United States | Various | Accounts Payable | | | | No | $35,157.93 |
| 3.3420 | Cummings & Lockwood LLC, Attn: Jonathan B. Mills, Esq. | 2 Greenwich Plaza, Suite 285 | | Greenwich | Connecticut | 06830 | United States | Various | Lease | X | X | X | No | Unknown |
| 3.3421 | Home Depot U.S.A., Inc. | 2455 Paces Ferry Road | | Atlanta | Georgia | 30339 | United States | Various | Master Collaboration Agreement | X | X | X | No | $5,500,000.00 |
| 3.3422 | Home Depot U.S.A., Inc. | 2455 Paces Ferry Road | | Atlanta | Georgia | 30339 | United States | Various | Accounts Payable | X | X | X | No | $682,938.52 |
| 3.3423 | Imagesound Ltd | Venture Way | Dunston Technology Park | Chesterfield | | S41 8NE | United Kingdom | Various | Accounts Payable | | | | No | $8,231.60 |
| 3.3424 | Marsh & McLennan Agency LLC | PO Box 405591 | | Atlanta | Georgia | 30384-5591 | United States | Various | Accounts Payable | | | | No | $1,188,230.00 |
| 3.3425 | Northeastern Communications, Inc. dba NorcomCT | 7 Great Hill Road | | Naugatuck | Connecticut | 06770 | United States | Various | Accounts Payable | | | | No | $170.16 |
| 3.3426 | PricewaterhouseCoopers LLP | 1 Embankment Place | | London | | WC2N 6RH | United Kingdom | Various | Accounts Payable | | | | No | $30,915.16 |
| 3.3427 | QOZB V, LLC | 1140 Virginia Drive | | Fort Washington | Pennsylvania | 19034 | United States | Various | Lease | X | X | X | No | Unknown |
| 3.3428 | SG Network Services, Inc. | 2390 Satellite Blvd | Suite R | Buford | Georgia | 30518 | United States | Various | Accounts Payable | | | | No | $1,313.00 |
| 3.3429 | Simple Com | 5582 Harrisburg | Industrial Park Drive | Harrisburg | North Carolina | 28075 | United States | Various | Accounts Payable | | | | No | $60.00 |
| 3.3430 | Tisha A. Duncan | 524 Meadow Court | | Mount Laurel | New Jersey | 08054 | United States | Various | Litigation Claim | X | X | X | No | Unknown |
| 3.3431 | T-Mobile | PO Box 742596 | | Cincinnati | Ohio | 45274 | United States | Various | Accounts Payable | | | | No | $11,169.82 |
| 3.3432 | Uline Inc | 12575 Uline Drive | | Pleasant Praire | Wisconsin | 53158 | United States | Various | Accounts Payable | | | | No | $2,872.60 |
| 3.3433 | Wells Fargo Bank, N.A. | 420 Montgomery Street | | San Francisco | California | 94104 | United States | Various | Credit Card Retailer Agreement | X | X | X | No | Unknown |
| 3.3434 | Wren Kitchens Ltd | The Nest | Falkland Way | Barton-upon-Humber | | DN18 5RL | United Kingdom | Various | Intercompany payables | | | | No | $7,570,832.54 |
| 3.3435 | Wren US Holdings Ltd | The Nest | Falkland Way | Barton-upon-Humber | | DN18 5RL | United Kingdom | Various | Intercompany payables | | | | No | $226,440,645.04 |
| 3.3436 | Zoom Video Communications, Inc. | 55 Almaden Boulevard | 6th Floor | San Jose | California | 95113 | United States | Various | Accounts Payable | | | | No | $66.25 |

**SCHEDULE G ATTACHMENT**
Executory Contracts and Unexpired Leases

| ID | Description of Contract or Lease | Notice Party's Name | Address 1 | City | State | ZIP | Country |
|---|---|---|---|---|---|---|---|
| 2.4313 | ADP - Service Agreement | ADP TotalSource, Inc. | One ADP Boulevard | Roseland | New Jersey | 07068 | US |
| 2.4314 | Comcast Master Service Agreement | Comcast Cable Communications Management, LLC | 1701 John F. Kennedy Blvd | Philadelphia | Pennsylvania | 19103 | US |
| 2.4315 | Headoffice - 8 Sound Shore | Cummings & Lockwood LLC, Attn: Jonathan B. Mills, Esq. | 2 Greenwich Plaza, Suite 285 | Greenwich | Connecticut | 06830 | US |
| 2.4316 | Equinix Master Country Agreement | Equinix LLC | One Lagoon Drive, 4th Floor | Redwood City | California | 94065 | US |
| 2.4317 | Home Depot - 1st Amendment to the Master Collaboration Agreement | Home Depot U.S.A., Inc. | 2455 Paces Ferry Road, N.W. | Atlanta | Georgia | 30339 | US |
| 2.4318 | Home Depot - Master Collaboration Agreement | Home Depot U.S.A., Inc. | 2455 Paces Ferry Road, N.W. | Atlanta | Georgia | 30339 | US |
| 2.4319 | Home Depot - Master License Agreement | Home Depot U.S.A., Inc. | 2455 Paces Ferry Road, N.W. | Atlanta | Georgia | 30339 | US |
| 2.4320 | Home Depot - Services Agreement | Home Depot U.S.A., Inc. | 2455 Paces Ferry Road, N.W. | Atlanta | Georgia | 30339 | US |
| 2.4321 | Commercial Auto - Travelers - 8102W5027182414G - 31/12/2025-31/12/2026 | Marsh & McLennan Agency LLC | PO Box 405591 | Atlanta | Georgia | 30384 | US |
| 2.4322 | D&O Insurance - B0509FINWM2650041 | Marsh & McLennan Agency LLC | PO Box 405591 | Atlanta | Georgia | 30384 | US |
| 2.4323 | Excess Property - Amherst - AH03-JRL-260000359-00 - 31/12/2025-31/12/2026 | Marsh & McLennan Agency LLC | PO Box 405591 | Atlanta | Georgia | 30384 | US |
| 2.4324 | Excess Umbrella - American Guarantee - AEC443790901 - 02/05/2026-31/12/2027 | Marsh & McLennan Agency LLC | PO Box 405591 | Atlanta | Georgia | 30384 | US |
| 2.4325 | Excess Umbrella - CNA - 7036551071 - 31/12/2025-31/12/2026 | Marsh & McLennan Agency LLC | PO Box 405591 | Atlanta | Georgia | 30384 | US |
| 2.4326 | Excess Umbrella - Travelers - EX3W313825 - 02/05/2026-31/12/2026 | Marsh & McLennan Agency LLC | PO Box 405591 | Atlanta | Georgia | 30384 | US |
| 2.4327 | General Liability - Travelers - Y6309X261124TIA25 - 31/12/2025-31/12/2026 | Marsh & McLennan Agency LLC | PO Box 405591 | Atlanta | Georgia | 30384 | US |
| 2.4328 | Inland Marine - Travelers - Y6309X261124TIA25 - 31/12/2025-31/12/2026 | Marsh & McLennan Agency LLC | PO Box 405591 | Atlanta | Georgia | 30384 | US |
| 2.4329 | Lead Umbrella - Travelers - CUP-2W521481 - 31/12/2025-31/12/2026 | Marsh & McLennan Agency LLC | PO Box 405591 | Atlanta | Georgia | 30384 | US |
| 2.4330 | Ocean and Transit - Travelers - ZOC51N7667223ND - 02/05/2026-31/12/2028 | Marsh & McLennan Agency LLC | PO Box 405591 | Atlanta | Georgia | 30384 | US |
| 2.4331 | Property - Travelers - Y6309X261124TIA25 - 31/12/2025-31/12/2026 | Marsh & McLennan Agency LLC | PO Box 405591 | Atlanta | Georgia | 30384 | US |
| 2.4332 | Lease - 777 Summer St, Stamford, CT | QOZB V, LLC | 1140 Virginia Drive | Fort Washington | Pennsylvania | 19034 | US |
| 2.4333 | Unitas - Master Agreement | Unitas Global | 700 South Flower St, Suite 575 | Los Angeles | California | 90017 | US |
| 2.4334 | Verizon - Service Agreement | Verizon Business Network Services Inc. | One Verizon Way | Basking Ridge | New Jersey | 07920 | US |
| 2.4335 | Wells Fargo - Agreement overview | Wells Fargo Bank N.A. | 101 North Phillips Avenue | Sioux Falls | South Dakota | 57104 | US |

**SCHEDULE H ATTACHMENT**
Codebtors

| ID | Codebtor Name | Codebtor Address | Creditor's Name | Creditor's Address | D | E/F | G |
|---|---|---|---|---|---|---|---|
| 2.085 | Wren Connecticut, Inc. | 8 Sound Shore Drive, Greenwich, Connecticut 06830 | Wren US Holdings, Ltd. | 8 Sound Shore Drive, Greenwich, Connecticut 06830 | x | | |
| 2.086 | Wren Kitchen Studios, Inc. | 8 Sound Shore Drive, Greenwich, Connecticut 06830 | Wren US Holdings, Ltd. | 8 Sound Shore Drive, Greenwich, Connecticut 06830 | x | | |
| 2.087 | Wren Kitchens Ltd. | The Nest, Falkland Way, Barton-upon-Humber DN18 5RL, UK | 8 Sound Shore Associates, LLC | 8 Sound Shore Drive, Suite 285, Greenwich, Connecticut 06830 | | | x |
| 2.088 | Wren Logistics, Inc. | 8 Sound Shore Drive, Greenwich, Connecticut 06830 | Wren US Holdings, Ltd. | 8 Sound Shore Drive, Greenwich, Connecticut 06830 | x | | |
| 2.089 | Wren Manufacturing, Inc. | 8 Sound Shore Drive, Greenwich, Connecticut 06830 | Wren US Holdings, Ltd. | 8 Sound Shore Drive, Greenwich, Connecticut 06830 | x | | |
| 2.090 | Wren New Jersey, Inc. | 8 Sound Shore Drive, Greenwich, Connecticut 06830 | Wren US Holdings, Ltd. | 8 Sound Shore Drive, Greenwich, Connecticut 06830 | x | | |
| 2.091 | Wren Kitchens New York, Inc. | 8 Sound Shore Drive, Greenwich, Connecticut 06830 | Wren US Holdings, Ltd. | 8 Sound Shore Drive, Greenwich, Connecticut 06830 | x | | |
| 2.092 | Wren Pennsylvania, Inc. | 8 Sound Shore Drive, Greenwich, Connecticut 06830 | Wren US Holdings, Ltd. | 8 Sound Shore Drive, Greenwich, Connecticut 06830 | x | | |
| 2.093 | Wren Retail, Inc. | 8 Sound Shore Drive, Greenwich, Connecticut 06830 | Wells Fargo Bank N.A. | 101 North Phillips Avenue, Sioux Falls, South Dakota, 57104 | | | x |
| 2.094 | Wren Retail, Inc. | 8 Sound Shore Drive, Greenwich, Connecticut 06830 | Wren US Holdings, Ltd. | 8 Sound Shore Drive, Greenwich, Connecticut 06830 | x | | |

**Fill in this information to identify the case and this filing:**

Debtor Name _____Wren US Holdings, Inc._____

United States Bankruptcy Court for the: _____ District of Delaware
(State)

Case number (*If known*): ___26-10581_____

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.  Bankruptcy Rules 1008 and 9011.**

**WARNING -- Bankruptcy fraud is a serious crime.  Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☒ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

☒ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

☒ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

☒ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

☒ *Schedule H: Codebtors* (Official Form 206H)

☒ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

❏ Amended *Schedule* ____

❏ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

❏ Other document that requires a declaration_____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on ___5/8/2026___          ✘ ___/s/ Craig Bishop_____
　　　　　　MM / DD / YYYY                         Signature of individual signing on behalf of debtor

　　　　　　　　　　　　　　　　　　　Craig Bishop
　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　Printed name

　　　　　　　　　　　　　　　　　　　Authorized Person
　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　Position or relationship to debtor